UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL ENRRIQUE TOBINSON MELENDEZ,<br><br>Petitioner,<br><br>v.<br><br>THE WARDEN OF NORTHWEST ICE PROCESSING CENTER,<br><br>Respondent. | CASE NO. 2:26-cv-02600-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Daniel Enrrique Tobinson Melendez's Petition on Writ of Habeas. Dkt. No. 1. Having reviewed Petitioner's petition, the Government's[1] return (Dkt. No. 5), Petitioner's traverse (Dkt. No. 10), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the petition.

[1] Petitioner named "Warden, Northwest ICE Processing Center ['NWIPC']," as the Respondent in this case. *See* Dkt. No. 1 at 1. Bruce Scott is the Warden of NWIPC; he has not appeared in this case. Instead, the United States participates in this case, and opposes Petitioner's petition, as an interested non-party. *See* Dkt. No. 9. The Court will refer to United States as "the Government."

## I. Background[2]

Petitioner is a native and citizen of Venezuela. Dkt. No. 11 (Soraghan Decl.) ¶ 4. On September 14, 2022, Petitioner was detained by United States Border Patrol ("USPB") near Eagle Pass, Texas. Dkt. No. 10-1 (Form I-213) at 3. The next day, due to detention capacity issues, USPB released Petitioner on parole pursuant to Immigration and Nationality Act ("INA") § 212(d)(5), 8 U.S.C. § 1182 (d)(5). Petitioner was issued a Form I-94 with a stamp indicating "parole." Dkt. No. 10-2 (Form I-94) at 2. Petitioner has lived in the United States continuously since that time and has not been arrested for or charged with any crimes. *See* Dkt. No. 10-1 at 4.

On June 25, 2026, Enforcement and Removal Operation ("ERO") officers conducted a field operation in Power County, Idaho. *Id*. at 3; Dkt. No. 11 ¶ 6. During the operation, ERO officers observed a Jeep Cherokee, took note of the license plate, and determined the vehicle was associated with Petitioner. Dkt. No. 10-1 at 3. ERO officers pulled the vehicle over, approached the vehicle, and spoke with Petitioner. *Id*. Petitioner provided the officers with his identification. *Id*. The officers' report did not document they had any reason to pull Petitioner over but documented that after receiving Petitioner's identification and conducting a "brief field investigation," they were able to determine that Petitioner was in violation of immigration law. *Id*. The officers then transported Petitioner to the custody of local Idaho State Police. *Id*.

On June 27, 2026, two days after Petitioner was detained and taken into police custody, ERO officers served Petitioner with an administrative Warrant for Arrest of Alien. Dkt. No. 10-3 at 2 (Warrant Form I-200). That same day, ERO officers also served Petitioner a Notice to Appear ("NTA"), charging Petitioner as inadmissible pursuant to (1) INA § 212(a)(6)(A)(i),

[2] Many of the facts recounted here are based on hearsay contained within narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Rita Soraghan, who does not claim to have firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 11 (Soraghan Decl.) ¶ 3). The Court makes no findings as to whether these are true and correct statements of fact.

8 USC § 1182(a)(6)(C)(i), as a noncitizen present in the United States without being admitted or paroled, and (2) INA § 212(a)(7)(A)(i)(I), 8 USC § 1182(a)(6)(C)(i), as an immigrant who at the time of the application for admission did not possess valid entry documents required under the INA. Dkt. No. 11 ¶ 8.

On June 30, 2026, ERO officers transferred Petitioner from police custody to the Northwest ICE Processing Center ("NWIPC"). *Id.* ¶ 9. On July 15, 2026, Petitioner appeared for a master hearing where he requested a continuance to attempt to obtain an attorney. *Id.* ¶ 10. The continuance request was granted, and the hearing was moved to August 17, 2026. *Id.* ¶ 11. At the time of this Order, the Parties have not updated the Court as to whether a merits hearing was held on August 17, 2026, and if so, what occurred at that hearing. However, the matter is fully briefed and ripe for the Court's review.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

Petitioner challenges the "legality of [his] detention." Dkt. No. 1 at 2. He makes this challenge on two grounds[3]: (1) his continued detention is unlawful because it is prolonged and, therefore, violates his due process rights (*see id.* at 2, 6); and (2) he has a serious medical condition, which requires a level of treatment that he has not and cannot received at the NWIPC

[3] Petitioner's petition states three grounds, but grounds one and three are the same ground, just worded differently.

(*id*. at 6). As a result of such alleged violations of his due process rights, Petitioner requests his immediate release, or in the alternative, an immediate bond hearing or "any other relief the Court deems just and appropriate." *Id*. at 7. In his traverse, Petitioner responds to the Government raising the *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) factors, and argues these factors weigh in his favor, and show that his re-detention did not comport with due process. *See* Dkt. No. 13 at 3–4. Lastly, Petitioner requests an order directing the Government to "ensure that [Petitioner] receive[s] [a] prompt and adequate medical evaluation and treatment while this petition is pending," which the Court interprets as a request for injunctive relief. Dkt. No. 1 at 7. The Court will first analyze the statutory basis for Petitioner's present detention, then address his grounds for relief in turn.

**A. Statutory Authority for Petitioner's Detention**

The Government argues that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). Dkt. No. 9 at 6–9. Petitioner's petition does not address his detention status (*see* Dkt. No. 1), and his traverse does not state a position as to what he believes the basis for his detention to be, instead arguing that that "the Government's reliance on § 1225(b) does not, by itself, dispose of Petitioner's constitutional challenge" (Dkt. No. 13 at 3). For the reasons stated below, the Court finds that Petitioner's detention authority is Section 1225(b).

In determining the detention status of a Petitioner who has been apprehended upon arrival to the United States, released, and later apprehended, "the Court considers the government's treatment of the petitioner seeking habeas relief as particularly relevant." *Pantoja Sanchez v. Hernandez*, No. C26-884, 2026 WL 1506130, at *2 (W.D. Wash. May 29, 2026); *see also Khan v. Hernandez*, No. C26-1697, 2026 WL 1893716, at *2 (W.D. Wash. July 1, 2026). In the instant matter, Petitioner was detained near the border and released the next day on "parole" under 8 U.S.C. § 1182(d)(5). *See* Dkt. No. 10-2 at 2; Dkt. No. 11 ¶ 5. "The fact that Petitioner was

released on parole indicates the government never considered him to be 'admitted' into the country." *Pantoja Sanchez*, 2026 WL 1506130, at *3. As another court in this District has observed, "When the government releases a § 1225 detainee under humanitarian parole, it reserves the right to continue to treat the non-citizen as if 'stopped at the border.' In other words, that parolee could be treated as seeking admission despite a long period of living in the United States while on humanitarian parole." *Del Valle Castillo v. Wamsley*, No. C25-2054, 2025 WL 3524932, at *6 (W.D. Wash. Nov. 26, 2025) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025)). When Petitioner was served with an NTA on June 27, 2026, his parole was terminated, and he was "restored to the status that he . . . had at the time of parole." 8 C.F.R. § 212.5(e). Specifically, he was restored to the status of an "arriving [noncitizen]"—i.e., an individual subject to mandatory detention under Section 1225(b).

**B. Constitutionality of Petitioner's Detention**

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26,

2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Arevalo-Hortua v. Hernandez*, No. C26-2994, 2026 WL 2797986, at *4–6 (W.D. Wash. Sept. 18, 2026); *Marquez Rujano v. U.S. Immigr. & Customs Enf't*, No. C26-325, 2026 WL 764150, at *3–4 (W.D. Wash. Mar. 18, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Relevant to this matter is 8 U.S.C. § 1182(d)(5)(A), where parole may be granted on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." If DHS decides to terminate a noncitizen's parole, then: (1) "the purpose for which parole was authorized" must have been accomplished, or "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) the noncitizen must be provided with written notice of the termination. 8 C.F.R. § 212.5(e)(2)(i).

Although Petitioner's petition does not address the *Mathews* factors as rationale for his release (*see* Dkt. No. 1), the Government response acknowledges the relevance of the *Mathews* analysis and argues it weighs in favor of denying the petition (*see* Dkt. No. 9 at 11–14). Petitioner replies to those arguments and addresses the factors. *See* Dkt. No. 13 at 3–4. With this backdrop, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

**1. The Private Interest Affected by the Official Action**

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (holding that a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz*, 53 F.4th at 1199.

The Government acknowledges the "weighty liberty interests" implicated by their detention of noncitizens, but they argue that noncitizens "released on humanitarian parole do not create the same expectation of interest as those released on discretionary orders of recognizance." Dkt. No. 9 at 13. But noncitizens released on parole still have a liberty interest in being free from detention. *See Arevalo-Hortua*, 2026 WL 2797986, at *4; *Hernandez v. Scott*, No. 26-759, 2026 WL 933361, at *3 (W.D. Wash. Apr. 7, 2026); *Amatbek Uulu v. Scott*, 2026 WL 865813, at *6 (W.D. Wash. Mar. 30, 2026). Petitioner relied on this liberty interest by participating in American society as a law-abiding resident of the United States for nearly four years, and took actions demonstrating his reliance on his ability to remain in the community such as attaining identification and a vehicle in his name. *See* Dkt. No. 10-1 at 3–4. Petitioner

emphasizes this extensive period of residency as evidence that his liberty interest is substantial. Dkt. No. 13 at 3. In totality, Petitioner's circumstance supports the conclusion that Petitioner's liberty interest is substantial, despite the fact that he was released on parole. Accordingly, the first *Mathews* factor weighs in Petitioner's favor.

**2. The Risk of Erroneous Deprivation**

As to the second *Mathews* factor, the Government argues that a pre-deprivation hearing was not necessary because of Petitioner's lowered expectation of a liberty interest. Dkt. No. 9 at 13. It further argues that this factor especially weighs in its favor because "ICE follow[ed] the parole revocation regulations and terminate[d] parole in accordance with its own process by issuing parole documents and terminating parole with a charging document." *Id*.

A declaration provided by Respondents' declarant Deportation Officer Rita J. Soraghan asserts "Petitioner's parole was valid until November 16, 2022, and a search of ICE records does not reflect that the parole was extended." Dkt. No. 11 ¶ 5. But Officer Soraghan does not claim to have firsthand knowledge of these event, *see id.* ¶ 3, and the record provides no factual support for any temporal limitation on Petitioner's parole, much less a limit of only two months. the only document that the Government provides as evidence that Petitioner was granted parole (and the only document Officer Soraghen refers to as having been issued in connection with that grant) is Form I-94, which does not include an expiration date on it. *See* Dkt. No. 10-2 at 2. Further, the Government does not argue in its response that Petitioner's parole expired, but rather that it was "terminated, by notice, when [Petitioner] was issued a[ Notice to Appear]." Dkt. No. 9 at 12. But ICE agents did not provide Petitioner with the Warrant for Arrest or the NTA charging document until two days *after* they first detained him at an Idaho jail. *See* Dkt. Nos. 10-1 at 3, 10-4 at 2. Notably, during those two days, Petitioner was not detained on criminal charges. *See* Dkt. No. 10-1 at 3–4 (determining that Petitioner was detained by ICE for a "violation of

immigration law" and that he had no criminal history). Therefore, during that time, Petitioner was detained solely for immigration-related reasons, yet still did not receive *any documentation* explaining his detention. Courts in this District have found that "due process for humanitarian parole[es] requires at least that (1) the Government justify the basis for re-detention as prescribed by the statute and its implementing regulations, and (2) noncitizens are given the opportunity to be heard with the Government's basis for re-detention at a meaningful time and in a meaningful manner." *Arevalo-Hortua*, 2026 WL 2797986, at *5 (citing *Torres v. Hermosillo*, 2026 WL 145715, at *6–8 (W.D. Wash. Jan. 20, 2026)). Providing notice of a warrant and parole revocation two days after detention does not count as notice at a "meaningful time and in a meaningful manner," and without proper notice, the risk of erroneous deprivation is high. *See id*. at *2, 5. Therefore, the second *Mathews* factor weighs Petitioner's favor.

**3. Government's Interest**

With respect to the final *Mathews* factor, the Government argues that it has "a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" Dkt. No. 9 at 13 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022)). This may be true, but such an interest is present in all immigration removal cases and does not mean the Government may dispense with proper re-detention procedures, especially when it fails to articulate a rationale for re-detaining a petitioner without notice. *See Kozlenkko v. Hernandez*, No. C26-3147, 2026 WL 2905404, at *6 (W.D. Wash. Sept. 28, 2026) (finding third *Mathews* factor favored petitioner who was on parole and re-detained where "the Government articulates no reason for revoking Petitioner's parole that might support an interest in detaining him without notice.")) *Arevalo-Hortua*, 2026 WL 2797986, at *5 (finding third *Mathews* factor favored petitioner who was on parole where respondents "bypass[ed] basic procedural

protections" and "identified no legitimate interest that would justify re-detaining Petitioners without pre-detention notice and a hearing.").

Next, the Government argues that it "has an interest in enforcing compliance with its orders of release on recognizance and returning individuals to custody when the original conditions underlying parole no longer warrant that parole." Dkt. No. 5 at 14. This statement is perplexing, as Petitioner was not released on an order of release on recognizance but on humanitarian parole, and, as in *Arevalo-Hortua*, the Government "ha[s] not provided the Court with evidence that [Petitioner] was subject to any conditions on parole, let alone that [he ever] violat[ed]" them. *Arevalo-Hortua*, 2026 WL 2797986, at *5; *see* Dkt. No. 5 at 13–14. Neither does it provide evidence that DHS ever determined that "the purpose for which parole was authorized" had been accomplished, or that "neither humanitarian reasons nor public benefit warrant[ed] the continued presence of [Petitioner] in the United States." *See* Dkt. No. 5 at 13–14; 8 C.F.R. § 212.5(e)(2)(i). The Government's general statements, offered without evidence to support them, are unconvincing. The third *Mathews* factor weighs in Petitioner's favor.

* * *

In sum, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, the Government's re-detention of Petitioner without proper notice violated his rights under the Fifth Amendment to the United States Constitution. The Court finds that the remedy for such a violation is release. *See, e.g.*, *Arevalo-Hortua*, 2026 WL 2797986, at *7 ((ordering release where re-detention of humanitarian parolee violated due process); *Hernandez*, 2026 WL 933361, at *3–4 (same); *Amatbek Uulu*, 2026 WL 865813, at *6 (same)

//

//

//

## IV. OTHER CLAIMS AND REQUESTED RELIEF

Because the Court grants Petitioner relief through its *Mathews* analysis, it need not address Petitioner's claims regarding prolonged detention and his medical condition. Further, as the Court is ordering Petitioner's release, his requests regarding medical treatment are moot.

## V. CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) Respondent, the Government, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention within **twenty-four (24) hours** of this Order under appropriate conditions of release; and

(b) SHALL submit to the Court, within **forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Petitioner's request "ensur[ing] that [Petitioner] receive[s] [a] prompt and adequate medical evaluation and treatment while this petition is pending" is DENIED as moot.

Dated this 2nd day of October, 2026.

Tana Lin
United States District Judge